## Eli Chevalier et al v. Edward J. Tyler et al

[111 A2d 722]

January Term, 1954.

Present: **Sherburne, C. J., Jeffords, Adams and Chase, JJ., and Shangraw, Supr. J.**

Opinion Filed February 1, 1955.

*John G. Kissane* and *A. Pearley Feen* for the defendants.

*John H. Webster* for the plaintiffs.

**Chase, J.** This is a suit in equity in which the plaintiffs. seek to permanently enjoin the defendants from using a cesspool situated on property owned by the plaintiffs and from permitting the overflow from such cesspool to flow onto property of the plaintiffs. The defendants, by way of answer and cross bill, claim the right to use this cesspool and to let its overflow run onto the land of the plaintiffs by reason of an implied reservation by necessity. The defendants seek to

permanently enjoin the plaintiffs from interfering with the use of this cesspool and from interfering with the discharge of this cesspool and that of another cesspool situated on lands of the defendant onto lands of the plaintiffs.

A hearing was had during the September Term, 1952 of the Franklin County Court of Chancery. Requests for findings were filed by the defendants. A decree was made which permanently enjoined the defendants, their servants, agents, executors, administrators, successors, heirs and assigns from discharging or depositing sewage and other waste material in and upon premises of the plaintiffs. The defendants took and were allowed exceptions to the admission and exclusion of evidence, to certain findings, to the failure to find as requested and to the decree. The case is here on the bill of exceptions of the defendants.

From findings of fact which are supported by substantial evidence and not excepted to, it appears that prior to her death a Matilda Cadorette was the common owner of property in Highgate, Vermont, known as the Franklin House property. The Franklin House property is located on the westerly side of U. S. Route 7 at an elevation extending above that highway. Easterly of Route 7 is the right of way of the Central Vermont Railway. Easterly of this right of way is land of the plaintiffs, called the 25 acre piece, which originally was a part of the Franklin House property. Route 7 and the railroad right of way are parallel and run generally in a north and south direction intersecting the Franklin House property as it was during the lifetime of Matilda Cadorette. During the time Matilda Cadorette owned the Franklin House property the sewage and waste matter from the Franklin House drained easterly into two cesspools. One cesspool, located south of some tennis courts, also received sewage from buildings other than the Franklin House, which buildings are now owned by a Marguerite Cadorette. The overflow from this cesspool ran into a trap or pit which during the hearing was sometimes referred to as a cesspool. Marguerite Cadorette now owns the property on which this trap or pit is located. The overflow from this trap or pit did and does now go under the railroad tracks onto the 25 acre piece. The other cesspool was located

on the 25 acre piece in a northeasterly direction from the Franklin House and its overflow ran onto the 25 acre piece. On October 25, 1943, the executor of the Estate of Matilda Cadorette conveyed the 25 acre piece to the plaintiffs but did not reserve the cesspool situated thereon nor the right to have the overflow of this and the other cesspool, which made up the sewage system of the Franklin House, run onto the twenty-five acre piece. On October 26, 1943, said executor conveyed a portion of the Franklin House property to Marguerite Cadorette and reserved the pit or trap situated thereon. On June 22, 1944, said executor conveyed to the defendants and John C. Wriston and Hildreth Tyler Wriston the balance of the Franklin House property. Included in this conveyance was the pit or trap situated on the property conveyed to Marguerite Cadorette. Subsequently the Wristons conveyed their interest to the Franklin House property to the defendants. At the time the plaintiffs acquired the 25 acre piece, plaintiff Eli Chevalier had been generally familiar with the sewage system of the Franklin House and its overflowing onto the 25 acre piece for some thirty years. From a finding that was excepted to but not briefed, it appears that after the defendants and the Wristons acquired the Franklin House property they installed on the railroad right of way a septic tank with a chlorinator in place of the cesspool located on the twenty-five acre piece. The overflow from this septic tank flows onto the twenty-five acre piece. The use of this septic tank and the permitting of the overflow from it to run onto the twenty-five acre piece was not made an issue in this case by the pleadings, although the case was apparently tried on the theory that it had been.

The defendants, in support of their claim of right to use the two cesspools and permit their overflow to run onto the 25 acre piece, rely upon an easement by implication. To create such an easement there must be—[1] Unity and subsequent separation of title. [2] Obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance. [3] Use of the premises by the common owner in their altered condition long enough before the conveyance to show that the change was intended

to be permanent. [4] Necessity for the easement. *Read* v. *Webster*, 95 Vt 239, 244, 113 A 814, 16 ALR 1068. There can be no reservation of an easement by implication unless the easement is one of strict necessity. *Wheeler* v. *Taylor*, 114 Vt 33, 34, 39 A2d 190.

The effective date in this case for the existence or non-existence of the four elements necessary to create an easement by implication was October 25, 1943, the date of the conveyance to the plaintiffs. *Wheeler* v. *Taylor*, 114 Vt 33, 37, 39 A2d 190; *Read* v. *Webster*, 95 Vt 239, 244, 113 A 814; *McElroy* v. *McLeay*, 71 Vt 396, 404, 45 A 898; 19 C. J. Easements, §120; 17 Am Jur. Easements, §43.

The first exception briefed by the defendants was to the admission of testimony of Eli Chevalier, one of the plaintiffs, that he would permit the defendants to lay tile across his land that lay northerly of the Franklin House so that sewage could be disposed of on land owned by the defendants. This land of the defendants was not a part of the Franklin House property on October 25, 1943, and the offer of the plaintiff, Eli Chevalier, could have no bearing on any question involved in this case. This exception is sustained.

The next exception briefed by the defendants was to the refusal of the Chancellor to find that the sewer system that existed at the time of the sale of the 25 acre piece was an obvious benefit to the hotel property and a burden to the 25 acre piece, as requested in No. 2 of Defendants' Requests. The un-contradicted evidence was that the sewer system as it existed on October 23, 1943, was the only system in existence for the disposal of the sewage from the hotel property and that the overflow from the two cesspools emptied into the brook or ditch on the 25 acre piece. Upon this evidence this request should have been complied with. This exception is sustained.

The next exception briefed by the defendants was to the refusal of the Chancellor to find that the use of the 25 acre piece for the purpose of receiving the overflow from cesspools was for a long period of time and that this use was intended to be permanent, as requested in No. 3 of Defendants' Requests. In addition to the evidence referred to under the previous

exception there was uncontradicted evidence given by the plaintiff, Eli Chevalier, that for thirty years prior to October 25, 1943, the overflow from the cesspools had run into the brook or ditch on the 25 acre piece. Upon this evidence this request should have been complied with. This exception is sustained.

The next exception briefed by the defendants was to the refusal of the Chancellor to find that the cesspools located easterly of the railroad tracks and on the southeasterly corner of the defendants' premises were there during the time when Eli Chevalier owned the premises north of the 25 acre piece which was for a period of approximately thirty years and that Eli Chevalier knew of their presence at the time he purchased the 25 acre piece, as requested in No. 4 of Defendants' Requests. Upon the uncontradicted evidence previously referred to and reasonable inferences therefrom this request should have been complied with. This exception is sustained.

The next exception briefed by the defendants was to the refusal of the Chancellor to find that the premises of the defendants are surrounded on all four sides by property of others and were so surrounded when plaintiffs purchased the 25 acre piece, as requested in No. 5 of Defendants' Requests. The substance of this request was self evident from the deeds which were exhibits in the case and should have been complied with. This exception is sustained.

The next exception briefed by the defendants was to the refusal of the Chancellor to find that at the time and after the plaintiff's purchase of the 25 acre piece there was no way to dispose of the overflow of the cesspools except upon, over or under land of others. In addition to the evidence already referred to there was uncontradicted evidence that there was no place on the hotel property where the overflow from the cesspools could be disposed of. Upon this evidence this request should have been complied with. This exception is sustained.

The next exception briefed by the defendants was to the refusal of the Chancellor to find that it was necessary that the overflow from the cesspools flow upon the 25 acre piece.

Upon the evidence already referred to this request should have been complied with. This exception is sustained.

The next exception briefed by the defendants was to that part of Finding 9, as amended, that the defendants owned certain lands west of U. S. Route 7 which could receive the flow north from the hotel property across lands of the plaintiffs and that the plaintiffs stated in open court that they were willing to grant defendants a right of way across their land for the purpose of laying a sewage conduit to land of defendants beyond. As we have previously pointed out the evidence on which this finding is based was inadmissible. Furthermore, as we have heretofore stated in this opinion conditions and facts as they existed on October 25, 1943, not at the time of trial, are controlling. This exception is sustained.

The next exception briefed by the defendants was to No. 6a of the Additional Findings. The defendants say, in effect, that they do not know what this Finding means. This is inadequate briefing.

The next exception briefed by the defendants was to No. 6b of the Additional Findings of Fact which is

> "6b. On October 25, 1943, the flowage of the twenty-five acre piece from the overflow of the sewage system was not a necessity to the continued reasonable use and occupancy of the Franklin House property by the grantor estate."

This finding is unsupported by the evidence, by the facts found and which should have been found and by any reasonable inferences from such facts.

These facts and reasonable inferences therefrom show that on October 25, 1943, the entire Franklin House property was owned by the estate of Matilda Cadorette and on that day the 25 acre piece was conveyed to the plaintiffs; that the sewer system, as it then existed, was an obvious benefit to the Franklin House and a burden to the 25 acre piece; that the sewer system, as it then existed, had been used by the Franklin House for about thirty years and was therefore intended to be permament; that the sewer system, as it then existed, was not

only the only system in existence for the use of the Franklin House but was the only system reasonably available and therefore was one of strict necessity.

The exception to Finding 6b of the Additional Findings of Fact is sustained.

The next exception briefed by the defendants was to Finding 6c of the Additional Findings of Fact that "On October 25, 1943, the common grantors of the parties reserved sufficient land westerly and northerly of the hotel property which was capable of accomodating installation of a septic tank or tanks and cesspools to receive waste from the hotel property." The argument of the defendants is that this finding is not supported by the evidence and is a conclusion not warranted by the evidence. We think the evidence amply supports this finding. However, since the uncontradicted evidence was that there was no place on the hotel property where the overflow from a cesspool could be disposed of and, so far as appears, there was no septic tank which was a part of the sewer system on October 25, 1943, the finding is immaterial to any issue in this case. This exception is not sustained.

The next exception briefed by the defendants was to finding 6d of the Additional Findings of Fact that "It was not the intention of the estate of Matilda Cadorette nor the plaintiffs to afford a reservation of flowage rights over the twenty-five acre piece on the date of the deed of that parcel to the plaintiff." The argument of the defendants is that this finding is not supported by the evidence and is a conclusion not warranted by the evidence. With this we agree for there is no evidence of the intention of the parties to the deed of October 25, 1943, except the deed itself and the facts and circumstances existing at that time. As we have already pointed out these facts and circumstances warrant a conclusion that the flowage of the overflow from the cesspools into the brook or ditch on the 25 acre piece was of strict necessity. This exception is sustained.

The next exception briefed by the defendants was to finding 8a of the Additional Findings of Fact that "Subsequent to the conveyance of the estate of Matilda Cadorette to the

defendants and the Wristons the flowage onto the twenty-five acre piece from the hotel sewage system was doubled in quantity during the operation of the Franklin House property." The argument of the defendants is that this finding is not warranted by the evidence and is not material to the determination of the case.   There was evidence that after the defendants and the Wristons took over, the water coming from the cesspools doubled so the evidence supports the finding.   It is material to the determination of the case because the owner of an easement cannot materially increase the burden of it upon the servient estate, nor impose a new or additional burden thereon.   *Dernier* v.  *Rutland Ry. Light & Power Co.*, 94 Vt 187, 194, 110 A 4;  *Hopkins the Florist, Inc.* v. *Fleming,* 112 Vt 389, 391, 26 A2d 96, 142 ALR 463;  *Kelbro, Inc.* v. *Myrick,* 113 Vt 64, 69, 30 A2d 527; 17 Am Jur, Easements, §98.   This exception is not sustained.

In applying this rule to this case it is necessary to determine the amount of overflow from the cesspools, which made up the sewer system of the Franklin House during the lifetime of Matilda Cadorette and prior to October 25, 1943, the date of the deed to the plaintiffs, in order to determine the extent of the burden upon the twenty-five acre piece.

■  The plaintiffs raise in their brief a question as to their rights as riparian owners of the brook or ditch on the twenty-five acre piece.   Since this point was not raised below it is not available here.   *Croteau* v. *Albee,* 117 Vt 332, 335, 91 A2d 803.

■  The defendants excepted to the decree.   Such an exception raises the question whether the decree is warranted by the pleadings and supported by the findings.   *Enosburg Falls* v. *Hartford Ins. Co.*, 117 Vt 114, 124, 85 A2d 577.   What we have said in regard to the exceptions to the findings disposes of this exception.   It is sustained.

Decree reversed and cause remanded with directions that further proceedings be had,

[1]   that the pleadings be amended to include the issue of the use of the septic tank,

[2] that a further hearing be had for the purpose of determining the extent of the overflow onto the twenty-five acre piece from the sewage system of the Franklin House during the lifetime of Matilda Cadorette and prior to October 25, 1943, the date of the conveyance to the plaintiffs.

When this has been done then

[3] let a decree be entered enjoining the defendants, their agents and servants and their heirs and assigns from overflowing the twenty-five acre piece, owned by the plaintiffs, except to the extent determined to have existed prior to the date of the conveyance to the plaintiffs.

[4] let a decree be entered on the cross bill enjoining the plaintiffs, their agents and servants and their heirs and assigns from interfering with the use of the sewage system of the Franklin House within the extent determined to have existed prior to the date of the conveyance to the plaintiffs.

[5] let neither side recover costs in this court.