Lodging North, Inc. v. Century Partners, LP, No. S0438-04 CnC  (Norton, J.,
June 24, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been
reformatted from the original. The accuracy of the text and the
accompanying data included in the Vermont trial court opinion database is
not guaranteed.]

STATE OF VERMONT                                        SUPERIOR COURT
Chittenden County, ss.:                              Docket No.S0438-04 CnC


LODGING NORTH, INC.

v.

CENTURY PARTNERS, LP


ENTRY


Plaintiff Lodging North, Inc. filed a four-count complaint against
Defendant Century Partners, LP seeking a judgment declaring that it has an
easement across Century Partners' property for the use of a storm drain.
Century Partners' amended nine-count counterclaim seeks judgment
declaring that no storm water easement exists and requests damages under a
variety of theories.  Lodging North has moved for summary judgment on
all counts.  Century Partners has made a cross motion for partial summary
judgment on all of Lodging North's counts and counts one through five and

eight of its counterclaim. For the reasons stated below, summary judgment is granted in favor of Century Partners on three counts.

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). In determining whether a genuine issue of fact exists, the nonmoving party receives the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15. Allegations to the contrary must be supported by specific facts sufficient to create a genuine issue of material fact. Id. Where opposing parties both seek summary judgment, each is entitled to the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists when the opposing party's motion is being judged. Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990).

## FACTS

The following facts are undisputed. In October 1987 Lodging North purchased an 8.7 acre parcel in South Burlington, Vermont, on which a hotel was located . In 1990, Lodging North subdivided the parcel into a 6.1 acre parcel containing the hotel ("Hotel Parcel") and a 2.6 acre undeveloped parcel. On August 29, 1990, Lodging North conveyed to Century Partners' predecessor, TAP Development Corporation, the 2.6 acre parcel by warranty deed. TAP subsequently merged with parent company Judge Development Corporation. On March 23, 1994, Judge Development conveyed the 2.6 acre parcel to Century Partners.

The conveyance of the 2.6 acre parcel from Lodging North to Century Partners' predecessor included reservations, restrictions, and rights-of-way of record, but did not reference the existence of a storm water system from the Hotel Parcel or a right to discharge storm water across

Century Partners' property. The conveyance included a 24-foot wide right-of-way to be used "for purposes of general ingress and egress (including but not limited to motor vehicle traffic)" to the Hotel Parcel. Neither party was aware of the existence of the storm water system on the 2.6 acre parcel until development of that parcel began in 1995 or 1996.

In 2003, Lodging North expanded its hotel by adding 33 units. This expansion increased its discharge into the storm water system. A representative of Century Partners appeared at a hearing before the District Environmental Commission on Lodging North's Act 250 application for the expansion and objected on the grounds that no storm water easement existed. Century Partners appealed the Commission's approval on the same basis.

## DISCUSSION

Lodging North seeks summary judgment on the basis of existence of an easement by implication or necessity. Century Partners' cross motion seeks summary judgment on the same issues as well as the remaining counts of Lodging North's complaint, easement by estoppel and a declaration that the express easement includes storm water. Century Partners also seeks summary judgment on several of its counterclaims involving the same issues, as well as a prescriptive easement and the burden on the servient estate of increased storm water discharge.

### I. Easement by Implication

An easement by implication may exist where there is (1) unity and subsequent separation of title, (2) obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance, (3) use of the premises by the common owner in their altered condition long enough before the conveyance to show that the change was

intended to be permanent, and (4) strict necessity for the easement. Chevalier v. Tyler, 118 Vt. 448, 450–51 (1955); Read v. Webster, 95 Vt. 239, 244 (1921). All four elements must have existed at the time of conveyance, in this case August 29, 1990. Chevalier, 118 Vt. at 451. The first element is undisputed. The remaining three require discussion.

There is some disagreement between the parties regarding whether the storm water system was "obvious" at the time of conveyance. Vermont recognizes both actual and inquiry notice with respect to interests in land. Myers v. LaCasse, 176 Vt. 29, 40 (2003). In addition, the modern view is that underground utilities, including drainage pipes, are per se apparent. Restatement (Third) of Property (Servitudes) § 2.12 cmt. g (2000); cf. Implied Easement in Respect of Drains, Pipes, or Sewers Upon Severance of Tract, 58 A.L.R. 832 ("the majority of cases which have considered the question have taken the view that appearance and visibility are not synonymous, and that the fact that the pipe, sewer, or drain may be hidden underground does not negate its character as an apparent condition; at least, where appliances connected with and leading to it are obvious."). The existence of the storm water system was per se apparent.

Lodging North must show use of the storm water system long enough before the conveyance to show that the change was intended to be permanent. Lodging North asserted in it Statement of Undisputed Material Facts that the storm water system has been in continuous use since 1968 and has been used by Lodging North since it purchased the property in 1987. There is no support in the record for this assertion, however. Where Century Partners has disputed the fact, the court finds the issue of length of use to be a disputed material fact. See V.R.C.P. 56(c)(2) & (3) and 2003 Reporter's Notes (Supp. 2004).

Contrary to the majority of jurisdictions, Vermont requires that an implied easement in favor of the grantor be of "strict necessity." See

Restatement (Third) of Property (Servitudes) § 2.12 cmt. e and Reporter's Note (collecting cases).  The Court's reasoning for a strict necessity requirement has been forcefully stated:

> To say that a grantor reserves to himself something out of the property granted, wholly by implication, not only offends the rule that one shall not derogate from his own grant, but conflicts with the grantor's language in the conveyance, which, by the rule, is to be taken against him, and is wholly inconsistent with the theory on which our registry laws are based.  If such an illogical result is to follow an absolute grant, it must be by virtue of some legal rule of compelling force.  The correct rule is, we think, that where, as here, one grants a parcel of land by metes and bounds, by a deed containing full covenants of warranty and without any express reservation, there can be no reservation by implication, unless the easement claimed is one of strict necessity, within the meaning of that term as explained in Dee v. King, 73 Vt. 375 [(1901)].

Howley v. Chaffee, 88 Vt. 468, 474 (1915).  The standard for strict necessity set forth in Dee v. King is, more than convenience or usefulness, whether there is any viable alternative.  73 Vt. at 377– 78.  A strict necessity has also been described as the only "reasonable" option.  Chevalier, 118 Vt. at 453-54.

There is a clear factual dispute concerning the strict necessity of an easement for the current storm water system.  Both parties have submitted affidavits by expert engineers.  The experts reach opposite conclusions concerning the feasibility of alternative storm water drainage systems.  In determining strict necessity, the court must consider alternatives to discharge across Century Partners' property.  See Chevalier, 118 Vt. at 452 (uncontradicted evidence that were no alternatives for sewage disposal required finding of necessity).  There is a factual dispute concerning the availability of viable alternative storm water drain systems.

Both parties' motions for summary judgment are denied with respect to the existence of an implied easement by continuous use due to factual disputes concerning several of the elements.

## II. Easement by Necessity

Unlike an implied easement based on use, where the basis is the intent of the parties, an easement by necessity is based on the public policy interest of providing accessibility to all land so that it may be made useful. Traders, Inc. v. Bartholomew, 142 Vt. 486, 491 (1983). An easement by necessity has traditionally been understood in Vermont as being about access to a landlocked parcel. The Vermont Supreme Court recently stated: "A way of necessity is 'a fiction of law,' that arises when the division and transfer of commonly owned land results in a parcel left entirely without access to a public road." Myers, 176 Vt. at 36 (internal citation omitted). However, Myers was a case specifically about overland access. Furthermore, the court went on to cite approvingly of the current Restatement's assertion that an easement by necessity

> avoids the costs involved if the property is deprived of rights necessary to make it useable, whether the result is that it remains unused, or that the owner incurs the costs of acquiring rights from landowners who are in a position to demand an extortionate price because of their monopolistic position.

Id. (citing Restatement (Third) of Property (Servitudes) § 2.15 cmt. a (2000)). This understanding is in keeping with the modern trend to broaden the use of easements by necessity to include utilities and, perhaps, other services.

> [T]he increasing dependence in recent years on electricity and telephone service, delivered through overland cables, justify the conclusion that implied servitudes by necessity will be recognized for those purposes. Whether access for other utilities and services

> has also become necessary to reasonable enjoyment of property depends on the nature and location of the property and normal land uses in the community.

Restatement (Third) of Property (Servitudes) § 2.15 cmt. d; see, e.g., Richards v. Land Start Group, Inc., 593 N.W.2d 103, 108-09 (applying principles of the Restatement (Third) of Property (Servitudes) to consider whether an easement for utilities was reasonably necessary for the needs of the dominant estate).  Whether or not an easement by necessity exists depends largely of the necessity for running the storm water system across Century Partners' land.  That issue, as stated in the discussion on implied easements above, remains a disputed material fact.

Summary judgment is therefore denied on the issue of easement by necessity.

### III.  Easement by Estoppel

A claim of easement by estoppel is analyzed using the ordinary elements of equitable estoppel.  See Tallarico v. Brett, 137 Vt. 52, 60 (1979).  "The party who invokes equitable estoppel has the burden of establishing all four of the following elements: (1) the party to be estopped must know the facts; (2) the party being estopped must intend that his conduct shall be acted upon or the acts must be such that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the conduct of the party to be estopped to his detriment."  Westco, Inc. v. City of Montpelier, 169 Vt. 520, 524 (1999).

Lodging North's claim of easement by estoppel is twofold: (1)

Century Partners sought Lodging North's permission to re-route the storm drain when Century North developed the 2.6 acre parcel in the mid 1990s and (2) Lodging North reasonably relied upon Century Partners' failure to object to the storm drain when it expanded its hotel in 2003. In support of its motion for summary judgment, Century Partners' Statement of Material Facts states only that objection to the hotel expansion was raised at the time of the Act 250 application hearing.

The evidence currently in the record concerning the 1996 re-routing of the storm water system is enough to support an inference that Century Partners undertook a course of conduct upon which Lodging North reasonably relied, but it is not dispositive without additional facts concerning the actions and understandings of the parties. Furthermore, there is a dispute as to whether the objection made by Century Partners at the time of the Act 250 hearing was sufficient to prevent Lodging North from acting to its detriment in investing in hotel expansion. There are currently insufficient undisputed facts to support judgment as a matter of law on the issue of easement by estoppel.

## IV. Scope of the Express Easement

The scope of an express easement, like all contract terms, is to determined first by the words used in the agreement. Tilley v. Green Mountain Power Corp., 156 Vt. 91, 93–94 (1991). Only if there is an ambiguity, will the court consider surrounding circumstances to discern the intent of the parties. Id. Lodging North contends that the express easement contained in the deed for the 2.6 acre parcel "for purposes of general ingress and egress (including but not limited to motor vehicle traffic)" to the Hotel Parcel can be construed to include a storm water system.

Lodging North specifically points to the language "including but not limited to motor vehicle traffic" and suggests that the easement is general.

The express easement, unambiguous on its face, allows only for "general ingress and egress." This provides for a right of entry and departure from the Hotel parcel. See Black's Law Dictionary (8th ed.) 798 & 555 (defining "ingress" and "egress" as the acts of entering and leaving). Cases cited by Lodging North for its proposition that a right-of-way should be construed broadly are distinguishable on this point because they involve terms written much more general than the deed here. See, e.g., Birdsey v. Kosienski, 101 A.2d 274, 275 (Conn. 1953) (easement was for "the right of passway from the north end to the south end of said piece of land"). The express easement for ingress and egress, as a matter of law, does not include a right to install a storm water system within the right-of-way. Thompson v. Pendleton, 697 A.2d 56, 59 (Me. 1997) (easement for ingress and egress did not include right to install utilities); U.S. Cablevision Corp. v. Theodoreu, 596 N.Y.S.2d 485, 487 (N.Y. App. Div. 1993) ("The grant of a mere right-of-way for ingress and egress does not, however, include the right to install underground pipes or utility lines.").

Summary judgment is granted in favor of Century Partners on the issue of scope of the express easement.

## V. Prescriptive Easement

Century Partners has moved for a summary judgment ruling that Lodging North does not have a prescriptive easement for the storm water system. To obtain an easement by prescription, Lodging North's adverse use must have been continuous for fifteen years. Cmty. Feed Store, Inc. v.

<u>Northeastern Culvert Corp.</u>, 151 Vt. 152, 155 (1989). Lodging North sold the 2.6 acre parcel in August 1990, development did not begin until 1995, and Century Partner's counterclaim was filed May 5, 2004. Thus, Lodging North cannot establish hostile use for the full fifteen-year statute of limitations. See 12 V.S.A. § 501. Summary judgment on this issue is uncontested by Lodging North and is granted.

## VI. Burden of Increased Storm Water Discharge

Century Partners has moved for summary judgment on the issue of whether the additional storm water discharge across its property as a result of hotel expansion has placed an undue burden on the servient estate. Because the court has not, at this stage, found an easement to exist, this issue is not ripe for review.

Based on the foregoing, Century Partners' motion for summary judgment is granted in part and denied in part. Lodging North's motion for summary judgment is denied.

Dated at Burlington, Vermont this ____ day of June, 2005.

_____
Hon. Richard W. Norton
Presiding Judge